### Home Fire Insurance Company *v.* Wilson.

Opinion delivered May 10, 1915.

Insurance—forfeiture for vacancy—waiver.—The act of the agent of an insurance company, with the usual authority of such an agent, when notified of a vacancy of the insured property, and requested to have the policy kept alive by a vacancy permit, in assuring the owner that the property is properly protected, operates as a waiver of a forfeiture of the policy caused by the vacancy.

Appeal from Columbia Circuit Court; *C. W. Smith,* Judge; affirmed.

*Wynne & Harrison,* for appellant.

1.   The vacancy of the building avoided the policy *ipso facto.* 109 Ark. 324; 2 Clements on Fire Insurance, 367; 5 So. 768; 42 N. W. 630; 65 Kans. 373; 69 Pac. 345; 69 S. W. 42; 27 *Id.* 122.

2.   The local agent had no authority to waive an express provision of the policy. 19 Cyc. 782; 22 Pac. 1010; 7 N. Y. Supp. 589.

3.   Appellees were bound by the limitations upon the agent's authority as stipulated in the policy. 2 Clements on Fire Ins., p. 487; 133 N. Y. 356; Ostrander on

Fire Ins., p. 192, § 56; 70 Wisc. 1; 35 N. W. 34; 54 Ark. 75; 26 So. 655; 43 N. W. 810; 120 Ga. 247; 66 Mo. App. 29; 32 S. W. 582.

4. There was no expressed nor implied waiver of the provisions of the policy against vacancy. 87 Ark. 327; 86 Ala. 424.

5. Rhea was appellees' agent. 109 Ark. 324; 109 *Id.* 330.

6. The parol agreement, if any existed, between appellees and the agent will not be enforced and no estoppel arises therefrom. Ostrander on Fire Ins., p. 749; 37 Mich. 613; 111 Ind. 90; Bigelow on Estoppel, (2 ed.) 438; 96 U. S. 544; Ostrander on Fire Ins. 750-751.

7. There was no waiver of the forfeiture by reason of the failure to return the unearned premium. 87 Ark. 327.

*C. W. McKay,* for appellees.

1. The agent had the authority and power to waive the forfeiture. 109 Ark. 324; 63 *Id.* 187; 62 *Id.* 348; 71 *Id.* 242; 88 *Id.* 506. Notice to the agent was notice to the principal. *Ibid.* The waiver may be oral. 88 Ark. 507.

2. As the insurer had knowledge of the forfeiture before the loss, and failed to return, or offer to return the unearned premium, a waiver resulted. 19 Cyc. 798; 45 N. W. 708; 141 S. W. 15; 110 *Id.* 604; 68 S. W. 889; 100 Am. St. 382; 50 N. E. 772; 12 *Id.* 137; 77 *Id.* 141; 36 *Id.* 990; 32 *Id.* 429; 65 Am. St. 717; 74 N. E. 964.

3. The insurer, through its agent, assured appellees that the insurance was in force, after knowledge of the forfeiture and before the loss. This is an affirmative act and amounts to a waiver. Cases *supra.* 87 Ark. 326; 109 *Id.* 324.

SMITH, J. This is the second appeal of this case. For opinion on the former appeal see *Home Fire Ins. Co.* v. *Wilson,* 109 Ark. 324.

As appears from the statement of facts in the opinion on the former appeal, appellees bought a house and lot upon which there was at the time an outstanding

policy of insurance in favor of their vendor, but by and with the consent of one John Rhea, who was appellant's agent at McNeill, Arkansas, the policy was transferred to appellees. It further appears that appellant's agent was also a rental agent, and that the house in question was listed with this agent for rent. Upon the former trial the cause was tried upon the theory that this agent had been requested to and had agreed to act for appellees, not only in renting this property, but in keeping it insured, and had agreed, at the time it was listed with him, to take whatever action might be necessary to continue the policy in effect. It was said, however, upon the former appeal that this agreement constituted Rhea the agent of the insured, and that in the performance of this agreement he was not acting as the agent of the insurer. And it was further held that this agent could not, by an executory agreement to take some future action, waive any of the conditions of the policy.

Discussing the effect of this agreement it was there said: "But an agent's executory agreement to waive future breaches, if any should occur, is not enforceable, for such an agreement is not a waiver of the effect of an existing condition, but is an amendment to the extent of such an agreement, of the terms of the written contract between the parties, evidenced by the policy of insurance. The understanding between appellees and Rhea, when given the highest effect of any inference that can be drawn from the conversation between them, is no more than an executory contract to keep appellees' insurance in effect, and to do whatever may be necessary for that purpose."

Under the record as then made, we held that judgment had been erroneously rendered against the insurance company, and the judgment was reversed and the cause remanded for a new trial.

Upon the remand of the case a trial was had before the court, sitting by consent as a jury, and the evidence at this trial was substantially the same as at the first trial with this important exception. Mr. Grayson testi-

fied that after the property became vacant he notified the agent of the appellant company of this vacancy, and he was at the time assured by the agent that the insurance was all right and the policy was in force and he would keep it in force. He testified further that he notified Mr. Rhea of the vacancy so that he might look after the insurance, and that Mr. Rhea told him the policy was in force. Mr. Wilson testified to substantially the same facts, and they were not contradicted by the agent, who was present and testified at the trial.

We need not discuss appellees' failure to make this proof at the former trial. The truthfulness of this statement was passed upon by the trial court, and the finding there made is conclusive upon us.

A different question is presented by the record in this case from the one decided upon the former appeal. It was shown at both trials that Mr. Rhea possessed all of the power and authority ordinarily possessed by local agents; that he was furnished by the company with blank applications, and with policies duly signed by its officers; that he had full authority to issue these policies, which were not valid until countersigned by him as agent of the company; that he had issued and countersigned the policy sued on; that he had full authority to consent to the transfer of policies, and did consent to the transfer of this policy from appellees' vendor to appellees; that he collected premiums and was authorized to cancel policies, and did cancel policies, and was authorized to issue vacancy permits, which were subject only to the right of the company to ratify or cancel.

Upon the former appeal we decided that the agent could not, by an executory agreement on his part, change or modify the written conditions contained in the policy, and further, that in any agreement upon his part to thereafter take the necessary action to continue a policy in effect he was thereby acting as the agent of the owner and not as the agent of the insurer. But it has also been frequently held that an agent possessed of the authority vested in Rhea can waive the conditions of the

policy. In the case of *Commercial Fire Ins. Co.* v. *Belk,* 88 Ark. 506, it was said: "Koeningstein was the agent of the defendant, and was entrusted with blank policies signed by the defendant with power and authority to solicit insurance, and, when obtained, to fill the blanks in the policy, receive the premiums and issue the policies, and consequently had the implied authoriy to waive the conditions of the policy. (*State Mut. Ins. Co.* v. *Latourette,* 71 Ark. 242; *Phoenix Ins. Co.* v. *Public Parks Amusement Co.,* 63 Ark. 187; *German-American Ins. Co.* v. *Humphrey,* 62 Ark. 348, and cases cited). He knew that appellee had contracted to sell and convey to Kifer the property insured, when the purchase price agreed upon was paid; he wrote the contract, and with full knowledge of the transaction assured appellee that her policies were 'all right.' The appellant, through its agent, thereby waived the condition in the policies as to sole and unconditional ownership of the insured property. With the assurance that the policies were all right, she rested in the belief that her property was insured until it was destroyed or damaged by fire. Appellant can not now avoid the policies, on account of the condition waived. *German-American Ins. Co.* v. *Harper,* 75 Ark. 98, and cases cited; *Arkansas Mutual Fire Ins. Co.* v. *Claiborne,* 82 Ark. 150, 162."

The proof now shows that appellees did not rely solely upon Rhea's promise to keep the policy in effect, but that, after the property had become vacant and the policy had forfeited and before the loss occurred, and at a time when appellant had the right to cancel the policy, and when other insurance could have been taken out had it done so, the agent of the appellant company assured the owners of the property that the insurance was in force.

The former opinion pointed out the difference between the executory promise of an agent to perform some future service in connection with a policy and his action in regard to a forfeiture which already existed. It was there said: "But this is not the case of property being

vacant at the time of the issuance of the policy, and of that vacancy being known to the agent issuing the policy, for, in such cases as stated, the authorities hold that the insurance company has waived the conditions of the policy against vacancy. Clement, on Fire Insurance, volume 1, p. 418. Nor is this the case of an insured advising the company's agent of a condition which would work a forfeiture, if not waived, yet one which could and would be waived upon the doing of some act by the agent which the insured assumed, in reliance upon the agent's promise, was done or would be done, but which the agent had, in fact, failed to do, for, in such cases, the authorities hold that the agent's neglect does not invalidate the policy."

We there quoted extensively from the opinion delivered by Chief Justice Campbell of the Supreme Court of Mississippi in the case of *Home Ins. Co. v. Scales*, reported in 15 So., p. 134. The controlling facts in this Mississippi case were identical with the facts considered by us, and the language of that court was applicable to the facts as developed on the former appeal. We quoted from the Mississippi court the following language: "It was no part of his business, as agent for the company, to keep policies from being avoided by violations of their conditions, whatever obligations he may have assumed by his engagements to the insured, as to which engagement he could not bind the insurer."

But the Mississippi court drew in that case the distinction which we now recognize when it employed the following language: "If Hibler, the agent, had done anything in his capacity as agent, after the house was unoccupied, to mislead the insured, the case would be different, but nothing of that sort occurred. There was silence, and that is never ground for estoppel except where it is a fraud which can not be predicated of this silence. The agent had a right to be silent, and give no notice as to the unoccupied condition of the house."

The agent here, who had the authority to issue the vacancy permit, which would have continued the policy

in force, was notified of the vacancy for the purpose, as stated by appellees, of having the policy kept in force, and they were assured by the agent that the insurance was in force, and this assurance must be held to constitute a waiver of the forfeiture. The trial court held in effect that the forfeiture was waived and rendered judgment accordingly, and we think that judgment should be affirmed, and it is so ordered.