## CAMDEN FIRE INS. ASS'N v. YARBOROUGH. (No. 653.)

(Court of Civil Appeals of Texas. Beaumont. March 3, 1921. Rehearing Denied. March 16, 1921.)

1. **Insurance** ⊙⟶389(1)—**Fire insurer, which failed to object, waived noncompliance with record warranty clause, and is estopped.**

Defendant fire insurer of a stock of lumber located on a railroad switch, which when plaintiff insured presented to its local agents the inventory required by the record warranty clause in the policy, did not, through such agents, object to the inventory as not a compliance with such clause, plaintiff insured believing he was meeting the requirements of the insurer, held to have waived the noncompliance with the record warranty clause, being estopped to set up the same as a defense to the suit after a loss, though the inventory was in part for the purpose of showing the value of the property to be insured.

2. **Evidence** ⊙⟶471(29)—**Testimony of insured as to kind of inventory required by fire insurer held admissible.**

In an action against a fire insurer of a stock of lumber located on the switch of a railroad, the defense being that insured had not complied with the record warranty clause of the policy, testimony of plaintiff insured as to whether the inventory before him at the time was the kind of inventory defendant insurer's agents instructed him to make held admissible, to show what kind of inventory was contemplated or necessary, as against the objection that it called for the conclusion of the witness.

3. **Appeal and error** ⊙⟶1050(2)—**Testimony of insured relative to inventory harmless to defendant fire insurer.**

In an action against a fire insurer of a stock of lumber on a railroad switch, wherein the defense was that insured had not complied with the record warranty clause of the policy, any error in admitting testimony of plaintiff insured that the inventory before him was the kind defendant insurer's agents instructed him to make held harmless to defendant insurer.

4. **Appeal and error** ⊙⟶1151(3)—**Judgment against fire insurer, erroneous as to period of interest, corrected.**

In an action on a fire policy, providing the sum for which the insurer was liable should be payable 60 days after due notice, ascertainment, and proof of loss, where plaintiff insured's petition alleged proof of loss had been made

October 13, 1913, judgment for him, awarding interest from December 3d of that year, was erroneous. The evidence showing that proof of loss was made, but not showing the date of making such proof, the Court of Civil Appeals will add the stipulated 60 days to the date of filing of suit, and render judgment for interest from such date.

Error from District Court, Nacogdoches County; L. D. Guinn, Judge.

Suit by R. H. Yarborough against the Camden Fire Insurance Association. Judgement for plaintiff, and defendant brings error. Reformed and affirmed.

Thompson, Knight, Baker & Harris, of Dallas, for plaintiff in error.

Smith, King & Hart, of Beaumont, for defendant in error.

O'QUINN, J. Suit by R. H. Yarborough, defendant in error, against Camden Fire Insurance Association, plaintiff in error, upon a fire insurance policy for $2,000. Trial upon special issues resulted in a verdict and judgment for defendant in error. Motion for new trial being overruled, plaintiff in error appeals. This is the second appeal of this cause. The first appeal is reported, as to the opinion of the Court of Civil Appeals in 182 S. W. 66, and as to the Supreme Court's opinion in 215 S. W. 842.

The policy was issued June 7, 1913, for a period of six months, to cover a stock of lumber belonging to defendant in error, located on the switch of the Gulf & Texas Railroad at Grigsby, Tex. On July 11, 1913, the lumber was totally destroyed by fire. The principal defense urged upon the trial was that defendant in error failed to comply with the following clause in the policy:

"Record Warranty Clause.

"Sec. 1. The assured will take a complete itemized inventory of stock on hand at least once in each calendar year and within twelve months of the last preceding inventory, if such has been taken. Unless such an inventory has been taken within twelve calendar months prior to the date of this policy, and together with a set of books showing a complete record of business transacted since the taking of such inventory, is on hand at the date of this policy, one shall be taken within thirty days after the date of this policy, or in each and either case this entire policy shall be null and void."

Defendant in error, by supplemental petition, answered and specially pleaded that plaintiff in error, by and through its duly authorized agents, had waived the breach, if any there was, of said record warranty clause, and was estopped from setting up same as a defense, to which plaintiff in error replied by general denial.

Upon conclusion of the testimony, plaintiff in error asked for a peremptory instruction in its favor, which was refused by the court,

229 S.W.—22

and whether the court erred in refusing to instruct a verdict for plaintiff in error is the principal question for determination. Plaintiff in error complains:

First. "The court erred in refusing, and further erred in not giving in charge to the jury, defendant's first requested charge, which is a peremptory instruction for it, for the reason that the undisputed evidence shows that the record warranty clause contained in the policy sued on was breached by the assured, and further shows that there was no waiver of such breach upon the part of the company, and further because the plaintiff did not submit or introduce sufficient evidence to show the extent of his loss herein."

Under this assignment, plaintiff in error submits the following propositions:

(1) "The undisputed evidence showing a breach of the record warranty clause contained in the policy sued on, and there being no waiver of such breach, the trial court should have directed a verdict for the defendant insurer."

(2) "A waiver or estoppel cannot be based upon a mistake of law, and if either the agents or the plaintiff were of the opinion that plaintiff's list constituted a compliance with the clause, same arose from a mistake of law as applicable to the facts."

That the inventory or list of lumber furnished by defendant in error to plaintiff in error was not a substantial compliance with the record warranty clause in the policy is held by the Supreme Court in this case on former appeal. 215 S. W. 842. The question now is: Was the same waived by plaintiff in error's agents at the time the policy was issued?

Defendant in error testified:

"I applied to the Sublet Insurance Agency for this insurance, and Miss Jennie Harris and J. Thos. Hall were the agents for the company. I know that at that time these parties issued various other insurance policies in other companies. They did this by signing their names to the policies—that is, the name of the Sublet Insurance Agency—and they collected premiums on these insurance policies. With reference to the 7th day of June, 1913, the date of the issuance of this policy, it was several weeks before that that I applied to Miss Jennie Harris for insurance upon this lumber. I first went to them some time in May, I don't know what time, and told Miss Jennie Harris, about having the lumber. I told her about having the lumber piled out at Grigsby, and could not ship it, and wanted to insure it, and Miss Jennie told me how to get this insurance. I applied to Miss Jennie Harris for the insurance. She did not issue the policies then, because I could not give her the inventory with reference to location, number of feet, etc., of the lumber, which she said was necessary. She told me to have the inventory made of the lumber, each pile and where it was, and the kind. In pursuance of this information and request, I had Mr. John Rhodes to take an inventory of this lumber. I did not get the insurance when I first applied for it, because I was informed I had to get an inventory of the lumber. I was here in the

town of Nacogdoches June 7th, the day the policy was issued, and I brought an inventory with me, and showed it to Mr. J. Thos. Hall and Miss Jennie Harris. I left a copy of the inventory with them. Mr. Hall figured it. I furnished to Miss Jennie Harris and Mr. Hall and the Sublet Insurance Agency this inventory which you now show me. Mr. Hall had in his possession a copy of this inventory, and figured from it the amount of the insurance that I could carry at the time the policies were issued to me. They did not demand of me any further inventory than this. They stated to me that the inventory constituted a compliance with the record warranty clause contained in the policy. I paid to the Sublet Insurance Agency the premium for this insurance. They have never paid it back to me, and neither has the Camden Fire Insurance Association paid it back, and they have not paid me for the loss of my lumber. Mr. J. Thos. Hall and Miss Jennie Harris expressed themselves as being pleased with this inventory, and that it was satisfactory. It was after the fire, after the lumber had been burned, before I heard that the insurance company raised any question about this inventory. I had not heard it before the fire. I paid the premium to them. They had a copy of this inventory, and at the time the policy was issued they told me to make an inventory of the lumber, and this is the inventory that I had taken. This is the kind of inventory they instructed me to make. I told her [Miss Jennie Harris, agent for the insurance company] that the lumber was on the switch at Grigsby, but I did not tell her how much I wanted to insure it for. I did not tell her how much I wanted to insure it for, because I did not know how much was there. I told her I wanted insurance on it, that I only wanted it for about six months, that I wanted a little time to get ready to ship it; and she told me how she was doing this thing and then told me to get an inventory of it, the number of pieces and where it was, and I did so and presented it to her, and she gave me the insurance. She said they demanded an inventory of this character."

J. Thos. Hall, agent and witness for plaintiff in error, testified:

"I was acting as the agent for this company and a number of other companies at that time here in Nacogdoches. I had blank forms of insurance policies in my office, signed by the president and secretary of the various insurance companies, and all that was necessary for me to do was to determine whether I would accept the risk and countersign the policy here at Nacogdoches, and I did not have to send the policy to the company for its signature. I had authority to issue policies myself—that is, the Sublet Insurance Agency had that authority—and I collected the premiums on the policies. I inspected the risks for the companies here at Nacogdoches, and the surrounding territory in which I wrote insurance. I run accounts with the insurance companies, and would remit from time to time as I would collect premiums, retaining my commission upon the policies that I wrote. Miss Jennie Harris was the policy writer, was connected with my company or agency at that time, and she had the authority and signed policies for the companies in the same capacity as I did. That is her signature there

on that policy. She would sign the name to these policies for the company. She had authority to sign these policies and deliver them. She also collected premiums and performed the same work that I performed in connection with the insurance business here. The records of my office show these policies were outstanding at the time of the fire."

Miss Jennie Harris, witness for plaintiff in error, testified:

"I was connected with the Sublet Insurance Agency when these policies were written. They were written on the 7th day of June, 1913. I did all the work in the office, including the writing of the policies themselves. I wrote these two policies of insurance, one in the Camden Fire Insurance Association, the other in the German American Fire Insurance Company, for Mr. Yarborough."

John Rhodes, witness for defendant in error, testified:

"I went to Grigsby in the month of May, 1913, for the purpose of getting an inventory of Mr. Yarborough's lumber. I went there at the request of Mr. Yarborough. In taking that inventory I took an inventory of each piece, and when the lumber was placed there I had it all piled separately, stacked in even lengths; that is, the 1x4's, 1x6's and 1x8's, etc., so that they could be easily counted; and I counted it pile by pile, length, width, and thickness, until I went through the entire stock. I would say that that is the same inventory that I took. I visited the switch after the fire, and all the lumber was totally burned up. The inventory shows the number of pieces, size, length, and total board feet."

It is shown by the proof, and not in any way denied, that J. Thos. Hall and Miss Jennie Harris were the duly authorized and acting agents for plaintiff in error. The jury found, upon special issues submitted by the court:

That plaintiff in error's local agents, Hall and Harris, informed defendant in error, before the policy was issued, that it was necessary for him to complete and submit to them an inventory of the lumber to be insured; that said agents instructed defendant in error how said inventory should be taken, and the requirements of same; that defendant in error prepared the inventory or list of lumber attached to his petition, in accordance with instructions given him by said agents; that he presented said inventory to said agents before the policy was issued; that said agents examined and approved said inventory; that said agents examined and approved said inventory as a compliance with the record warranty clause in said policy; that said agents did, on June 7, 1913, and before the policy was issued, state to defendant in error that the said list or inventory of lumber constituted a compliance with the record warranty clause contained in the policy; that the action of plaintiff in error, by and through its said agents, in accepting de-

fendant in error's inventory, and their instructions to him as to how said inventory should be taken, and its requirements, and the approval of said inventory, and the acceptance of the premiums paid by defendant in error for said insurance policy, and the delivery of said policy to defendant in error, did lead the defendant in error to believe that said list or inventory of lumber constituted a compliance with the provisions of the record warranty clause contained in the policy; and that plaintiff in error's said agents · accepted the said list or inventory of lumber as~a full compliance with the provisions of said record warranty clause.

[1] We hold that the plaintiff in error waived the noncompliance with the record warranty clause, and that it is now estopped to set up same as a defense to this suit. The agents of plaintiff in error knew, at the time defendant in error presented to them the inventory of the lumber, whether it was such as they had requested, and whether it complied with the record warranty clause in the policy. They had full knowledge of the existing facts, and that defendant in error was endeavoring to act under their instructions in supplying them with the list or inventory of the lumber, and, according to defendant in error's testimony, they examined and accepted the said inventory, and stated that same was satisfactory and in compliance with the said record warranty clause. It appears from the record that defendant in error believed that he was meeting the requirements of plaintiff in error; that he, in good faith, attempted to comply with every demand made, and paid his money for said insurance policy, without any knowledge or intimation from any source that any condition had not been met. The plaintiff in error's agents accepted the inventory, and issued the policy, without in any way questioning the sufficiency of the compliance with the said record warranty clause, and they nowhere in their testimony say that the facts found by the jury are not true. The law is well settled that where the insurer, at the time of the issuance of a policy of insurance, has knowledge of existing facts which, if insisted upon, would invalidate the contract from its very inception, such knowledge constitutes a waiver of conditions in the contract inconsistent with the known facts, and the insurer is estopped thereafter from asserting the breach of such conditions.'

But plaintiff in error contends that the waiver cannot avail defendant in error, because, if a waiver, it is one based upon a mistake of law, and that a waiver or estoppel cannot be based upon a mistake of law, and that if either the agents of plaintiff in error or the defendant in error were of opinion that defendant in error's list or inventory of lumber constituted a compliance with the record warranty clause of the pol-icy, same arose from a mistake of law, as applied to the facts. We do not understand that to be the question involved here. The question here is whether the plaintiff in error's agents accepted the inventory furnished by defendant in error as a compliance with the record warranty clause contained in the policy, and whether by their words, coupled with their acts, they led defendant in error to believe that he had furnished an acceptable inventory to them. These questions were submitted to the jury, and they found against plaintiff in error, and we think the evidence amply supports their finding. That plaintiff in error's agents had the power to waive any defect in the inventory is not questioned; and that any acts, declarations, or course of dealing by an insurer, with knowledge of the facts constituting a breach of a condition in a policy, leading the person insured honestly to think, if conforming·thereto, forfeiture of his policy will not be incurred, followed by conformity on his part, estops the insurer from insisting on the forfeiture, is equally well settled. As was said in the case of Gurnett v. Atlas Mutual Insurance Company, 124 Iowa, 547, 100 N. W. 542:

"The law is charitable enough to assume, in the absence of any showing to the contrary, that an insurance company intends to execute a valid contract in return for the premium received; and when the policy contains a condition which renders it void at its inception, and this result is known to the insurer, it will be presumed to have intended to waive the condition, and to execute a binding contract, rather than to have deceived the insured into thinking his property is insured when it is not, and to have taken his money without consideration."

See R. C. L. vol. 14, p. 1158, § 339; R. C. L. vol. 14, p. 1166, § 348, note 18; R. C. L. vol. 14, p. 1181, §§ 357, 359; Insurance Co. v. Ende, 65 Tex. 123; Wagner & Chabot v. Insurance Co., 92 Tex. 549, 50 S. W. 569; 19 Cyc. 777; Camden Fire Insurance Ass'n v. Wandell, 195 S. W. 289; Home Fire Ins. Co. v. Wilson, 118 Ark. 442, 176 S. W. 688, L. R. A. 1918E, 409; Western Assurance Co. v. Hillyer Co., 167 S. W. 816; West v. West, 9 Tex. Civ. App. 475, 29 S. W. 245; Life & Casualty Ins. Co. v. King, 137 Tenn. 685, 195 S. W. 585, 589; New Jersey Fire Ins. Co. v. Baird, 187 S. W. 356; National Fire Ins. Co. v. Carter, 199 S. W. 507.

Plaintiff in error's second and fourth assignments of error raise in different form the same question as is presented in its first assignment, and what we have said as to that disposes of these assignments. In its third assignment plaintiff in error complains:

"The court erred in refusing, and further erred in not granting the motion of defendant for judgment upon.the answers of the jury to the special issues submitted to them, for the reason that under the findings of such jury, it

340 229 SOUTHWESTERN REPORTER (Tex.

is apparent that the purpose of the list of lumber taken by plaintiff, as testified about, was for the purpose only of allowing plaintiff and defendant's agents to ascertain the amount of insurance to which the plaintiff was entitled."

Plaintiff in error insists that by the first six special issues, and the answers of the jury thereto, the jury found, in substance, that defendant instructed plaintiff to take an inventory of the lumber for the purpose only of determining how much insurance to write, and that defendant in error had this inventory taken for the purpose of determining to how much insurance he was entitled. It is true that the inventory was for the purpose of showing the value of the property to be insured, but it is equally true that that was not the only purpose. By the seventh to twelfth issues, inclusive, and the answers of the jury thereto, the jury found that on June 7, 1913, and before the policy was issued, defendant in error had made and presented to plaintiff in error's agents at their request an inventory of the lumber to be insured, which inventory they examined and accepted as a compliance with the record warranty clause in the policy, and at the time stated to defendant in error that the inventory of the lumber constituted a compliance with the record warranty clause in the policy. The jury also found, in answer to special issue No. 11, that the action of the plaintiff in error's agents in accepting defendant in error's inventory, and their instructions to him, and the approval of the inventory, and the acceptance of the premium, and the delivery of the policy to defendant in error, led the defendant in error to believe that the inventory of the lumber, which he had made at their request and under their instructions, and which they had examined, approved, and accepted, constituted a compliance with the record warranty clause of the policy. This being true, under the findings of the jury, plaintiff in error's agents waived said provision of the policy, and it was the duty of the court to refuse plaintiff in error's motion for judgment, and to render judgment for defendant in error on the answers of the jury.

By its fifth, sixth, seventh, eighth, and tenth assignments of error plaintiff in error complains that the answers of the jury to the ninth, tenth, eleventh, twelfth, and thirteenth special issues are against the undisputed evidence, and are without evidence to support them, and should be set aside. These assignments are overruled. There is ample evidence to support the verdict of the jury.

[2, 3] The eleventh assignment of error is:

"The court erred in permitting the plaintiff to testify and further erred in not sustaining defendant's bill of exception No. 4."

Bill of exception No. 4 recites:

"Be it remembered upon the trial of the above cause, while the plaintiff was upon the stand testifying in his own behalf, he was asked by his counsel this question: 'I will ask you is this —is this the kind of inventory they instructed you to make? A. Yes, sir.' To which question and answer the defendant objected and moved to strike out, on the ground that the same called for the conclusion of the witness, which objection and motion were by the court overruled, to which ruling of the court defendant excepted, and tenders this its bill of exception No. 4."

Defendant in error, on the trial of the case below, as plaintiff, testified:

"I applied to Miss Jennie Harris for the insurance. She did not issue the policy then, because I could not give her the information with reference to the location, number and feet, etc., of the lumber, which she said was necessary. She told me to have an inventory made of the lumber. * * * In pursuance with this information and request I had Mr. John Rhodes to take an inventory of this lumber. I furnished Miss Jennie Harris and Mr. J. Thos. Hall of the Sublet Insurance Agency [agents representing plaintiff in error] this inventory which you now exhibit before me. They did not demand of me any further inventory than this. They stated to me that the inventory constituted a compliance with the record warranty clause contained in the policy. I paid them the premium for the insurance. J. Thos. Hall and Miss Jennie Harris expressed themselves as being pleased with this inventory and said that it was satisfactory. They told me to make an inventory of the lumber and this is the inventory that I had taken. This is the kind of inventory they instructed me to make."

It is evident that the question and answer related to the request of the plaintiff in error's agents to defendant in error for an inventory, and their statement to him that it would be necessary for him to make and present to them an inventory before they could issue any policy of insurance, and also related to the kind of an inventory they instructed him to make, and that he was testifying, with the inventory before him at the time, that it was the kind of inventory they requested. We think the testimony was admissible to show what kind of inventory was contemplated, or desired and necessary; but, if it be conceded that the objection should have been sustained, it is difficult to conceive how the statement could have injured the rights of plaintiff in error. If error, it was harmless error.

[4] Plaintiff in error's ninth assignment of error is as follows:

"The judgment is excessive as to interest."

The policy sued on provides:

"The sum for which this company is liable, pursuant to this policy, shall be payable sixty days after due notice, ascertainment, estimate, and satisfactory proof of the loss have been received by this company, in accordance with the terms of this policy."

Plaintiff's petition alleged that proof of loss had been made on October 13, 1913, but

this was denied by defendant. The plaintiff testified that he made proper proof, but the record does not disclose the date of such proof. The fire occurred July 11, 1913, and the suit was filed January 21, 1914. Judgment was rendered March 2, 1920. Plaintiff testified that he made this proof of loss before the filing of the suit, but did not testify to the exact date of making such proof of loss. The judgment of the court grants interest from and after December 3, 1913, which would not be 60 days after the date of proof of loss alleged in plaintiff's petition, to wit, October 13, 1913. It may be that the date December 3, 1913, from which interest is allowed in the judgment, is an error in the record, and may have been intended for December 13; but, be that as it may, we must take the record as we find it, and so hold that it was error to grant interest from December 3, 1913. However, as the matter is developed sufficiently for us to determine it, the proof showing that proof of loss was made, but not showing the date of making such proof, we will here add the 60 days to the date of filing of the suit, January 21, 1914, making March 23, 1914, the date from which interest should have been allowed, and here render the judgment that should have been rendered below, to wit, judgment for defendant in error, plaintiff below, for $2,-712, being $2,000 principal, and $712 interest at six per cent. from March 23, 1914, to date of judgment, March 2, 1920, the said judgment to bear interest at the rate of 6 per cent. per annum from and after March 2, 1920.

Finding no reversible error in the record, the judgment will be reformed as to the interest, as above indicated, and the judgment, as reformed, affirmed. The costs of this appeal will be taxed against defendant in error.

Reformed and affirmed.