## DETROIT FIRE & MARINE INS. CO. v. WRIGHT. (No. 1741.)

(Court of Civil Appeals of Texas. El Paso. May 14, 1925. Rehearing Denied June 11, 1925.)

1. **Insurance ☞372—Fire policy provision, requiring insured to keep books in fireproof safe at night, may be waived by insurer.**

Provision of fire policy, requiring insured to keep complete set of books showing condition of business in fireproof safe at night, or in some other secure place not exposed to fire, being for insurer's protection, may be waived by it.

2. **Insurance ☞665(8) — Evidence that insured's agent knew that insured did not have fireproof safe held sufficient to show waiver of iron safe clause.**

Evidence that insurer's agent and inspector knew that insured did not have fireproof safe, and did not intend to get one, held sufficient to show insurer's waiver of clause requiring insured to keep books in fireproof safe at night.

3. **Insurance ☞388(3)—Provision limiting total fire insurance to amount of policy held waived by insurer.**

Where insured procured additional fire insurance in another company, through same agent from whom he obtained policy in defendant company, it must be assumed that defendant assented thereto, and waived policy provision limiting total insurance to amount of its policy.

4. **Insurance ☞372—Insurer may waive provisions of policy in form prescribed by state insurance commission.**

Insurer may waive provisions of policy, which is in form prescribed by state insurance commission.

Appeal from District Court, Taylor County; W. R. Ely, Judge.

Action by A. M. Wright against the Detroit Fire & Marine Insurance Company. Judgment for plaintiff, and defendant appeals. Affirmed.

E. G. Senter, of Dallas, for appellant. Dallas Scarborough, of Abilene, for appellee.

HIGGINS, J. In the form prescribed by the insurance commission, appellant issued to appellee a fire insurance policy in the sum of $1,500, upon his stock of merchandise, dated October 5, 1922. On March 26, 1923, a total loss by fire occurred. Payment being refused, this suit upon the policy was instituted, resulting in judgment in appellee's favor for the amount of the policy with interest. The case was submitted upon special issues, all of which were answered in the plaintiff's favor.

It is insisted a peremptory instruction in appellant's favor should have been given, because the undisputed evidence shows appellee breached the iron safe and record warranty clause of the policy, in that he failed to take an inventory of the stock within 12 months and keep a complete set of books showing the business transacted, including purchases, sales, and shipments, and keep such inventory and books locked in a fireproof safe at night, or in some other secure place not exposed to a fire which would destroy the building, and, in the event of loss or damage to the property, insured to deliver such inventory and books to appellant for examination.

The evidence shows an inventory was taken and books kept which met the requirements of the policy, but it is further shown that appellee had no safe, and kept his books and papers in a desk in the building. They were destroyed by the fire, and he was unable to produce them as the policy required.

[1] The iron safe and record warranty clause, like any other provision of an insurance policy which is inserted for the protection of the insurer, may be waived by the insurer. Ins. Co. v. Starr-Mayfield Co. (Tex. Civ. App.) 135 S. W. 252; Camden Fire Ins. Ass'n v. Yarborough (Tex. Civ. App.) 229 S. W. 336; Mitchell v. Ins. Co., 72 Miss. 53, 18 So. 86, 48 Am. St. Rep. 535; 3 Cooley Briefs on Ins. 2644; 3 Joyce on Ins. (2d Ed.) § 2064.

[2] Subsequent to the issuance of the policy, and prior to the loss, the risk was inspected by F. H. Bagby, Jr., appellant's special agent and inspector. With respect to what occured at that time appellee testified:

"Mr. Bagby came down to my place of business. He came down there with Mr. Weldon Russell, the defendant's local agent in Abilene. * * * He asked me about my manner of bookkeeping, and how I kept my books, and if I had an iron safe to keep them in, and I showed him my books and where I kept them. I kept my books in a wooden desk, and he asked me if I knew that there was a clause in my policy that required me to keep an iron safe and keep my books in it at night, and I told him, 'No; I did not know anything about the clause in the policy—that' I never had one before, and I never read that one,' and we discussed that matter a while, and I told him if there was a clause like that, or if there was anything else in that policy that would interfere with my collecting my money immediately if I happened to have an accident why I would be glad, or I would like for him to cancel the policy and refund me my money, and I would carry the risk myself, as I did not consider it a very bad risk. He said it was a bad risk. Weldon Russell, the local agent, was present during all of this conversation, and heard everything that was said. Answering what, if anything, Mr. Bagby said about returning my premium, he and Mr. Russell left then, and said he would see me later and he came back that evening. I asked him if he had come to bring my money back, and he said, 'No;' he had decided to keep the policy. He did not say anything to me that evening about getting an iron

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

safe. He did not say anything that morning about getting an iron safe. He just discussed the proposition of whether I had one or whether I was going to get one or not, and I told him I was not; that I was not able to buy a safe; that I had just started business and I had put everything I had in the business, and that I was struggling to make a living; that I was not able to buy a safe and was not going to buy a safe. That conversation occurred the morning that Mr. Bagby and Mr. Russell came down there. Mr. Russell was present; Mr. C. W. Withrow and some of the other parties were there. I do not know who they were. They never returned my premium. My premium was never returned. I did not receive any notice of the cancellation of the policy from the company. I did not hear any more about it."

Appellee's testimony with reference to this matter is corroborated by the testimony of the local agent Russell, who accompanied Bagby upon his inspection; also by a former employee of appellee who was present at the time. This evidence is sufficient to show a waiver of the iron safe clause under the authorities above cited.

In this connection we quote what was said by the Supreme Court of Mississippi in Mitchell v. Ins. Co., supra:

"To ask us to hold that an insurance company shall ostensibly contract for keeping an inventory and books of account in an iron safe, or at some secure place apart from the premises on which the property insured is kept, and, yet, with full knowledge that the insured had, and intended to have, no safe, and with full knowledge that such inventory and books of account had been kept, and were to be continued to be kept, at the store, to receive the insured's premiums as for a valid policy, the company intending to deny its validity if loss should occur, is to ask us to sanction trickery and fraud. The insurer cannot be permitted to collect premiums with the full knowledge of the existence of facts which might avoid the policy, and with full knowledge of the insured's purpose to continue, in disregard of a provision working a forfeiture, to conduct the business as theretofore in such disregard. We cannot legalize by our sanction such perfidy."

[3] The appellant's policy authorized a total of $1,500 concurrent insurance, including that policy. Subsequent to the issuance of the policy, appellee procured additional insurance with the Central States Fire Insurance Company in the sum of $500. It is asserted the peremptory instruction should have been given because the procuring of the additional insurance breached the stipulation against additional insurance. This additional insurance, however, was written by the same agent who represented appellant in Abilene, and through whom appellee obtained the policy sued upon. Under such circumstances it must be assumed that appellant assented to the additional insurance and waived the provision in question. Ins. Co. v. McLemore, 7 Tex. Civ. App. 317, 26 S. W. 928; British et al. v. Francis Co., 58 Tex. Civ. App. 75, 123 S. W. 1144; Ins. Co. v. Dalton (Tex. Civ. App.) 189 S. W. 771; Ins. Co. v. Griffin, 59 Tex. 510; Morrison v. Ins. Co., 69 Tex. 353, 6 S. W. 605, 5 Am. St. Rep. 63; Ins. Co. v. Lyons, 38 Tex. 253.

[4] With respect to the issue of waiver of those provisions of the policy above referred to, it is insisted by appellant that the policy is upon the form prescribed by the state insurance commission, and it is not permissible for it to waive any of its provisions. This is untenable under the following authorities: Ins. Co. v. Tabor, 111 Tex. 155, 230 S. W. 397; Ins. Co. v. Street (Tex. Civ. App.) 265 S. W. 397; Ins. Co. v. Hopkins (Tex. Com. App.) 244 S. W. 989.

What has been said disposes of all questions presented which go to the merits. The appellant's brief is exceedingly voluminous, and presents a number of assignments, some of which relate to questions other than those discussed. Those have all been considered, and are regarded as without merit.

Affirmed.