**TEXAS STATE MUT. FIRE INS. CO. v. LEVERETTE. (No. 442.)\***

(Court of Civil Appeals of Texas. Waco. Dec. 23, 1926. Rehearing Denied Jan. 13, 1927.)

1. **Insurance** ⬄371—Waiver of ground for forfeiture of insurance policy is unilateral, and need not be founded on new agreement or supported by consideration.

Waiver of ground for forfeiture of insurance policy is unilateral in character so that no act of insured is necessary to complete it, and it need not be founded on new agreement or supported by consideration, nor be based on an estoppel.

2. **Insurance** ⬄388(3)—Act of insurer's officers, recognizing continued validity of policy after knowledge of breach, waives right of forfeiture for such breach.

Any action of insurer, through officers specified in policy as empowered to waive its provisions, which recognizes continued validity of policy after actual or imputed knowledge of breach of provision therein, will amount to waiver of right to forfeit policy for such breach.

3. **Insurance** ⬄378(3)—Knowledge or notice of insured's intention to breach iron-safe clause in fire policy is not imputed to insurer by insured's agreement with soliciting agent.

Notice or knowledge that insured intended to breach iron-safe clause in fire policy cannot be imputed to insurer by reason of insured's understanding with soliciting agent of insurer, who had no power to contract, since his attempt to modify policy was void.

4. **Insurance** ⬄378(3) — Knowledge of insured's intention to violate iron-safe clause of fire policy, acquired by inspector, should be imputed to insurer.

Knowledge that insured intended to breach iron-safe clause in fire policy, acquired by insurer's inspector when he visited insured to inspect risk, should be imputed to company, whether communicated to it or not.

5. **Insurance** ⬄388(3), 390—Insurer waived breach of iron-safe clause in fire policy by failing to annul and allowing goods to be moved after notice.

Insurer *held* to have waived breach of iron-safe clause in fire policy by failing to cancel policy when it learned of breach of clause, especially when officer, authorized to waive provisions of policy, subsequently issued permit to remove property to another place.

Appeal from District Court, Limestone County; J. R. Bell, Judge.

Action by W. C. Leverette against the Texas State Mutual Fire Insurance Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Tyler & Hubbard, of Belton, for appellant. C. S. & J. E. Bradley, of Groesbeck, for appellee.

GALLAGHER, C. J. Appellee, W. C. Leverette, sued appellant, Texas State Mutual Fire Insurance Company, in the district court of Limestone county, Tex., to recover the sum of $1,000 on a fire insurance policy, issued by appellant, covering a stock of merchandise belonging to appellee which was totally destroyed by fire during the life of said policy. Appellant is a mutual fire insurance company, with its home office in Dallas, Tex. Its defense in this suit was based on an al-

leged violation of the record warranty clause contained in said policy. Appellee alleged waiver of said clause at the issuance of the policy and also after it had been received and accepted by him. Appellant denied such waiver and alleged that it did not know of the violation of said clause until after the property insured by said policy was destroyed by fire.

The application for said policy of insurance was taken by one Clark, who was authorized by appellant to solicit insurance. He did not have authority to issue policies. His authority was limited to soliciting applications, forwarding the same to the home office of the company for acceptance or rejection, delivering the policies, if policies were written at the home office, and collecting premiums therefor on delivery. Appellee's application was accepted by the company, the policy sued on issued and forwarded to Clark for delivery. He delivered the same and collected the premium thereon. The stock of merchandise covered by said policy was situated at Farrar, Tex. Said policy contained the standard record warranty clause, which, as far as applicable to the facts of this case, provided that the insured should take an inventory within 30 days from the date of said policy, and that he from and after such date should prepare and keep a set of books plainly presenting a complete record of the business transacted; that he should keep said inventory and books securely locked in a fireproof safe at night and at all other times when his store was not open for business; and that a failure to observe said requirements should render the policy null and void. Said policy also provided that no agent of said company except the president, vice president, secretary, or treasurer should have authority "to waive, change, or alter any of the provisions, stipulations, and conditions in said policy without the written consent of one of the above-named officers."

Appellant testified that the soliciting agent, Clark, knew, at the time he made application for said policy, that he had no fireproof safe and that he had not theretofore kept a set of books. He further testified that said agent told him to inventory the stock, and then get a book and put down in said book the amount of such inventory, and to record therein each bill of goods bought and the amount of sales at the end of each day or week. He further testified that said agent told him to keep said book in his residence where it could be saved in case of fire. He did not testify that said agent instructed him to record said inventory in detail in said book. Neither did he testify that said agent instructed him to keep said inventory in his residence. A more definite statement of these instructions is unnecessary, in view of the fact that it is not contended that a strict observance of the same would have amounted to a substantial compliance with the terms and requirements of the policy. Appellee

further testified that shortly after he received said policy an inspector from the home office of the company came to his store to examine the risk; that he discussed with said inspector the fact that he did not have an iron safe and the instructions given him by Clark, and exhibited to said inspector the book he was keeping in an attempt to comply with said instructions. He also testified that said inspector repeated the instructions given him by Clark. Neither Clark nor said inspector was called to testify, nor was appellee's testimony on this issue in any way contradicted. Concerning the visit and examination made by said inspector, the active vice president and manager of appellant testified:

"I did not send anybody down there to inspect Mr. Leverette's stock of goods before the policy was issued. We sent an agent to look after it after it was written. * * * Our inspector called on Mr. Leverette some time in September, I think, and made a report. * * * He goes to the house and looks over the stock of goods, and looks at the building and the general condition, and makes an inspection of that kind. He is also supposed to ascertain whether or not the iron-safe clause is being complied with. The inspector is for the benefit of both the insured and the company. * * * We have a report where he inspected this property. * * * It was his duty to see that those things were complied with. * * * We had him inspect that property for the purpose of ascertaining whether or not we would continue the policy in force. After he made the inspection, the policy was not canceled. We let it remain in force after the report was made upon which we could or not cancel that policy as we liked."

Appellee's residence, at the time the policy was issued, was in the rear end of the store building. Some time thereafter appellee moved his stock of merchandise from Farrar to New Hope. After such removal he resided in a building separate from the store. A proper removal permit covering this change of location was issued over the signature of secretary of the company and attached to said policy. Appellee kept the book referred to in his residence. His stock of merchandise was entirely destroyed by fire during the term covered by the policy. When appellant's adjusters came, he presented to them the book above referred to, which he had preserved by keeping the same at his residence. All other books, invoices, and papers pertaining to the business had been lost in the fire. Appellant repudiated liability and tendered a return of the premium paid for said policy. Such tender being refused, the amount of said premium was deposited in court.

The trial was before a jury. At the close of the evidence appellant moved for an instructed verdict, which motion was overruled, and the case submitted on special issues. The jury, in response to said issues, found, in substance, that the soliciting agent, Clark, discussed with appellee the fact that

he had no iron safe and instructed him with regard to keeping his books and papers; that he instructed him to keep a book containing certain information, and that he kept said book as instructed, and that the same contained the information he was instructed to record therein; that within 30 days after the date of the policy appellee took an inventory of his stock of merchandise and entered the amount thereof in said book; that appellee kept said book from the date of the policy until the fire, and exhibited it to appellant's agents or adjusters when they called to adjust the loss. Judgment was rendered in favor of appellee for the full amount of said policy, and appellant presents such judgment for review by this court.

## Opinion.

[1] The first proposition presented by appellant as ground for reversal of the judgment is that the court erred in refusing its motion for an instructed verdict. All the other propositions presented by appellant are in line therewith and subsidiary thereto and need not be separately considered. The record shows, we think, conclusively, that the record warranty or iron-safe clause, as it is commonly called, contained in the policy sued on, was breached. Such breach, unless waived by appellant, avoided the policy. Said policy provided, in substance, that no one except certain specified officers of appellant should have authority to waive any of its provisions. Waiver of a ground for forfeiture of an insurance policy is essentially unilateral in its character and results as a legal consequence from some act or conduct of the company against which it operates. No act of the insured is made necessary to complete it. It need not be founded upon a new agreement or be supported by a consideration. Neither is it essential that it be based upon an estoppel. Equitable Life Assurance Society v. Ellis, 105 Tex. 526, 538, 539. 147 S. W. 1152, 152 S. W. 625.

[2, 3] Any action of the company through the officers specified in the policy, which recognized the continued validity thereof after actual or imputed knowledge of the breach of said provision, would amount to a waiver of the right to forfeit the policy on account of such breach. 105 Tex. 536, 537, 147 S. W. 1152, 152 S. W. 625. We do not think that notice or knowledge that appellee intended to breach the provisions of the policy is to be imputed to appellant by reason of the understanding concerning compliance with such provisions between appellee and the soliciting agent, Clark. He had no power to contract, and appellee was charged with notice of that fact by the terms of the policy. Having no such power, his attempt to modify the terms of the policy by agreement was void. Knowledge of an intent or purpose on the part of appellee to disregard and fail to comply with the promissory warranties contained in the policy was concern-

ing a matter outside of the limited scope of his employment. Hartford Fire Ins. Co. v. Walker, 94 Tex. 473, 477, 479, 61 S. W. 711; Fitzmaurice v. Mutual Life Ins. Co., 84 Tex. 61, 64, 19 S. W. 301; 32 C. J. p. 1326, § 579. See, also, on the effect of knowledge at the time of the delivery of the policy of an intent on the part of the insured to violate such warranties, International Indemnity Co. v. Duncan (Tex. Civ. App.) 254 S. W. 233, 234, 235, and authorities there cited.

[4] We think, however, that the knowledge acquired by appellant's inspector when he visited appellee's place of business for the purpose of inspecting the risk should be imputed to the company, whether communicated to it or not. It was his duty to examine into the general conditions affecting the risk and amount and condition of the stock, and, in addition thereto, to ascertain whether the record warranty or iron-safe clause was being complied with. He seems to have performed these duties. The evidence shows affirmatively that he was fully advised about the manner in which the books and papers of appellee's business were kept, the contents of the principal book kept by him, and the precautions taken to prevent its loss in case his place of business was destroyed by fire. Said inspector necessarily knew that appellee believed that the course being pursued by him with reference to these matters met the approval of the company. There is no intimation in the evidence that he made any objection thereto or that he advised any change with reference to these matters. This information was acquired by said inspector in the discharge of the duties of his employment in connection with the very matter to which it related. He made a report of his inspection to appellant. Appellant did not see fit to offer such report in evidence. Appellant's active vice president and manager testified that he could have canceled appellee's policy on the information contained in said report. If said inspector reported the facts as they came to his knowledge, appellant's managing officers knew from such report that the provisions of the policy with reference to these matters were being violated. If he did not so report, his knowledge of such violation will be imputed to appellant because he was its agent, charged with the specific duty of ascertaining whether such provisions were being complied with by appellee, and knowledge that they were not being complied with was acquired in the discharge of such duty of his employment. Detroit Fire & Marine Ins. Co. v. Wright (Tex. Civ. App.) 273 S. W. 628, 629 (writ refused); Sovereign Camp W. O. W. v. Hines (Tex. Civ. App.) 273 S. W. 927, 929, 930; Phœnix Insurance Co. v. Holcombe, 57 Neb. 622, 78 N. W. 300, 301, 73 Am. St. Rep. 532; 26 C. J. p. 299, 2d column.

[5] The Court of Civil Appeals, in Detroit Fire & Marine Insurance Co. v. Wright, supra, under facts substantially the same as

in this case, held that a failure to cancel the policy after the company's inspector learned of the breach of the record warranty or iron-safe clause contained in the policy, amounted to a waiver of such breach and that thereafter such breach constituted no defense to an action of said policy. The Supreme Court approved such holding by refusing a writ of error. Appellee's evidence herein presents a still stronger case of waiver. After the inspection above referred to, appellee moved his stock of merchandise to another town. Appellant, over the signature of its secretary, one of the officers authorized by the terms of said policy to waive its provisions, issued a permit for such removal and attached the same or authorized the same to be attached to said policy. Such action was an unequivocal and affirmative recognition of the continued validity of said policy long after appellant had actual or imputed knowledge of the breach by appellee of the provisions in question, and amounted to a waiver of such breach. Equitable Life Assurance Society v. Ellis, supra.

The court did not err in refusing to instruct a verdict for appellant. None of the other propositions presented justifies a reversal, and the judgment of the trial court is affirmed.