## VEAL et al. v. FIRE ASS'N OF PHILADELPHIA.

### No. 12322.

Court of Civil Appeals of Texas. Fort Worth.
April 26, 1930.

Rehearing Granted June 21, 1930.

Preston Martin, of Weatherford, for appellants.

Thompson, Knight, Baker & Harris and Pinkney Grissom, all of Dallas, for appellee.

BUCK, J.

We heretofore awarded a judgment and wrote an opinion in this case, in which opinion we reversed the judgment of the trial court and rendered judgment for appellants, giving $339.23 to C. D. Hartnett Company and $160.67 to J. H. Veal. Upon motion for rehearing, we have concluded that we erred in rendering judgment for appellant, and we therefore withdraw the opinion handed down April 26, 1930, and render this opinion in lieu thereof.

Plaintiff J. H. Veal kept a grocery store and some dry goods and hardware at Lacasa. His store was the only one at Lacasa. He al-

leged, and the evidence showed, that defendant, through its duly authorized agent, M. D. Paschall, of M. D. Paschall & Sons of Cisco, called upon plaintiff at his store and asked him to take out a policy of insurance with the defendant company on his store of merchandise. M. D. Paschall inspected said store of merchandise and urged plaintiff to take out $800 of insurance. Paschall found that the store of merchandise was of the reasonable value of $1,250. Veal did not at first want to take out any insurance, but Paschall urged him to do so, and, at last, on August 13, 1928, Veal agreed to take $500 of insurance, and at the time a premium of $3.50 for each $100, amounting to $17.50, was paid by Veal. Said policy of insurance was prepared at the home office at Dallas and later delivered to Veal, who placed it in his coat pocket, where it remained. On January 26, 1929, at about 7:30 o'clock p. m., and while Veal and his wife were absent at Ranger, some ten miles distant, for the purpose of buying some bread to be sold from his store, the store burned and was totally destroyed. Veal, who was only 24 years old, had never had a policy of insurance before, and Paschall undertook to tell him what he must do to comply with the terms of the policy. Paschall told Veal that he would have to keep a record of his sales, cash and credit, and keep books of what he handled in the store. He did not tell him how the books must be kept, but Veal complied with what he understood to be the instructions and kept a record of the additional purchases of goods and his cash sales, and the sales made on credit. He did not have an iron safe, which fact was known to Paschall, as the agent of the defendant, from his examination of the stock of goods. Veal had never kept an iron safe and did not know that the insurance policy required him to do so. He did not read the policy.

The next day after the fire occurred, Veal telephoned Paschall & Sons, and Paschall came over to Lacasa on the following day, and about two weeks later the adjuster from the insurance company came over with M. D. Paschall. On the following day the three men met at Cisco, and Veal was required to make an affidavit as to the fire, and his loss. Veal was well acquainted with Paschall and had known him all his life. A demand was made upon the insurance company for the amount of the insurance, and the insurance company refused to pay the same, owing to an alleged noncompliance with the "record warranty" clause, which is as follows:

"Section 1. The assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and within twelve months of the last preceding inventory, if such has been taken. Unless such inventory has been taken within twelve calendar months prior to the date of this policy, and together with a set of books showing a complete record of business transacted since the taking of such inventory, is on hand at the date of this policy, one shall be taken within thirty days after the date of this policy, or in each case, this entire policy shall be null and void.

"Sec. 2. The Assured will make and prepare, in the regular course of business, from and after the date of this policy, a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and on credit, or this entire policy shall be null and void.

"The term 'Complete record of business transacted,' as used above, is meant to include in said set of books a complete record of all the property which shall go into the premises and be added to the stock, and of all property taken from the stock, whether by the Assured or by others, even though not technically purchases or technically sales.

"If the business of the Assured under this policy be that of manufacturing, this complete record of business transacted must, in addition, show all the raw material received and all products manufactured therefrom, including the cost of manufacture, and must show waste in process of manufacture, and must show all the raw material and manufactured property which is taken from the building described.

"Sec. 3. The Assured will keep and preserve all inventories of stock taken during the current year and also all those taken during the preceding calendar year, which are on hand when this policy is issued, and will keep and preserve all books which are then on hand, showing a record of business transacted during the current calendar year and the preceding calendar year.

"The Assured will also keep and preserve all inventories taken after the issuance of this policy, and all books made and prepared after the issuance hereof, showing a record of business transacted.

"The books and inventories, and each of the same, as called for above, shall be by the Assured kept securely locked in a fire-proof safe at night, and at all times when the building mentioned in the policy is not actually open for business, or, failing in this, the Assured shall keep such books and inventories, and each of them, in some secure place not exposed to a fire which would destroy said building; and, in event of a loss or damage insured against to the personal property mentioned herein, said books and inventories, and each of the same, must be by the Assured delivered to this Company for examinations; or this entire policy shall be null and void, and no suit or action shall be maintained hereon for any such loss.

"It is understood and agreed that this clause and the requirements thereof is one of

the inducing causes to the acceptance of the risk herein assumed and the issuance of this policy, and that the terms and requirements hereof are material to the risk, and to this insurance, and to any loss or damage happening to the property described in this policy.

"It is further agreed that the receipt of such books and inventories, or the request of either of them, and the examination of the same, shall not be an admission of any liability under this policy, nor a waiver of any provision or condition of this policy, or of any defense to the same."

At the time of the fire, Veal owed the C. D. Hartnett Company $339.33 for groceries, and after the fire, in order to secure said Hartnett Company, assigned the policy, or so much of it as was necessary to pay the debt, to C. D. Hartnett Company, and the Hartnett Company joined Veal as plaintiff.

The cause was tried before the county court without the intervention of a jury, and judgment was rendered for the defendant, from which judgment this appeal is taken. The trial court filed findings of fact and conclusions of law as follows:

"1. I find that the plaintiff J. H. Veal was the owner of a stock of groceries with some small stock of dry goods, and hardware, located in a country store house near Lacasa, Stephens County, on about August 12, 1928; that the agent of defendant company solicited said plaintiff to have some fire insurance written on his stock, or about that date; that such agent did on August 13, 1928, write in defendant company, a policy in defendant company, insuring said plaintiff's stock for a term of one year from that date against all direct loss or damage by fire except, as therein provided, to an amount not exceeding five hundred dollars.

"2. That said policy was delivered to said plaintiff and that he paid the agent of defendant a premium of $17.50 therefor.

"3. I further find, that on January 26, 1929, the plaintiffs' store, including his stock of goods, was totally destroyed by fire, with the exception of about $12.00 worth of goods, the fire occurring after six o'clock in the evening of that day at a time when the store was not open for business and while the defendant and his wife were away in Ranger, but that they returned to the store location after the fire and the same night. I further find that the plaintiff was operating what is known as a country store, located in a wooden store house, and that plaintiff and his wife made their home in the rear part of the store house.

"4. I find that the insurance policy issued by defendant to plaintiff J. H. Veal and the policy sued upon which was introduced in evidence contained the following stipulations and provisions, being what is commonly known as the Record Warranty Clause in words and figures as follows: (Here follows said clause.)

"5. I find that the plaintiff J. H. Veal did not have an inventory of his stock at the time of the issuance of the policy; that he did not take any inventory of his stock within 30 days after the policy was written, and that he never had taken any inventory during the little more than 12 months he was in business; and I find that there was no inventory on hand or taken when said plaintiff bought the stock.

"6. I find that the plaintiff J. H. Veal did not keep his books or records that he had in an iron safe at night; that he did not have any iron safe at the time of the fire, and he did not have one thereafter.

"7. I find that the plaintiff kept what business records he had in the same building where his stock was, and that he did not keep such records as he had in a secure place not exposed to a fire which would destroy the building in which the stock was located.

"8. I find that the plaintiff did not deliver to the defendant company any books or inventories for examination, upon the loss of the stock of goods by fire, the records he testified to having been burned in the fire.

"9. I further find that the plaintiff did not make and prepare, from and after August 13, 1928, a set of books which clearly and plainly presented a complete record of business transacted, including all purchases, sales and shipments, and such a set of books as included all the property which went into the premises, and was added to the stock, and all the property taken from the stock, whether by the assured or others, even though not technically purchases or sales.

"10. I find that the agent of the company knew that the plaintiff did not have an iron safe at the time the policy was written; I further find that neither the company's agent, nor the company had any knowledge or notice of any of the other facts found herein in paragraphs numbered five to nine, inclusive, until after the time of the fire. I further find the agent of the company was not in the plaintiff Veal's store at any time after the issuance of the policy, and that from and after the date of the issuance of the policy, the agent of the defendant M. D. Paschall did not take with or have any further dealings with the plaintiff concerning the matters contained in the Record Warranty clause, and that no other agent or representative of the defendant did.

"11. I find that the policy was assigned to the other co-plaintiff, the C. D. Hartnett Co. March 6, 1929.

"12. I find that the stock of goods destroyed by the fire was of the value of one thousand dollars.

"Conclusions of Law.

"1. I conclude that the policy became and was null and void, by reason of the failure of the plaintiff J. H. Veal, to do the things,

which he undertook to do, as set out in the record warranty clause.

"2. I conclude that the defendant has not waived the provisions of the record warranty clause, and that the defendant has not done anything to estop it from asserting the promissory warranties contained within the record warranty clause.

"3. I conclude that the violations of the record warranty clause which I find plaintiff J. H. Veal committed, are not violations of the sort of warranties, conditions or provisions contemplated by article 4930 of Statutes of Texas of 1925, as amended Acts 40th Legislature (1927), p. 48, c. 33, § 1 (Vernon's Ann. Civ. St. art. 4930), and that said statute does not relieve plaintiff from the penalty contained in the policy, and that the plaintiffs should take nothing by this suit, and that the defendant should go hence without day and recover its costs and judgment is so ordered."

### Opinion.

■ Article 5056, Rev. Civ. Statutes, 1925, provides, in effect, that any person who solicits insurance on behalf of any insurance company is an agent of said company. Article 4930 contains what is usually designated as the "anti-technical" statute, and is as follows:

"No breach or violation of the insured of any of the warranties, conditions or provisions of any fire insurance company, contract of insurance or application therefor, upon personal property, shall render void the policy or contract, or constitute a defense to a suit for loss thereon, unless such breach or violation contributed to bring about the destruction of property."

This act was passed in 1913, Acts of 1913, p. 194, c. 105. Section 2 of said act provides that the provisions hereof shall in no way affect or repeal the provisions of article 4874 of the Revised Civil Statutes of 1911 in so far as the same relates to fire insurance policies upon real or mixed property. Article 4874, Rev. Civ. Statutes of 1911, provides:

"A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy; provided, that the provisions of this article shall not apply to personal property."

No part of the act of 1913 is included in the Code of 1925 save article 4930, heretofore quoted.

■ In Detroit Fire & Marine Ins. Co. v. Wright, 273 S. W. 628, by the El Paso Court of Civil Appeals, writ of error refused, it is said:

"The iron safe and record warranty clause, like any other provision of an insurance policy which is inserted for the protection of the insurer, may be waived by the insurer. Ins. Co. v. Starr-Mayfield Co. (Tex. Civ. App.) 135 S. W. 252; Camden Fire Ins. Ass'n v. Yarborough (Tex. Civ. App.) 229 S. W. 336; Mitchell v. Ins. Co., 72 Miss. 53, 18 So. 86, 48 Am. St. Rep. 535; 3 Cooley Briefs on Ins. 2644; 3 Joyce on Ins. (2d Ed.) § 2064."

In Mitchell v. Ins. Co., supra, the Supreme Court of Mississippi said:

"To ask us to hold that an insurance company shall ostensibly contract for keeping an inventory and books of account in an iron safe, or at some secure place apart from the premises on which the property insured is kept, and yet, with full knowledge that the insured had and intended to have no safe, and with full knowledge that such inventory and books of account had been kept and were to be continued to be kept at the store, to receive the insured's premiums as for a valid policy, the company intending to deny its validity if loss should occur, is to ask us to sanction trickery and fraud. The insurer cannot be permitted to collect premiums, with full knowledge of the existence of facts which might avoid the policy, and with full knowledge of the insured's purpose to continue, in disregard of a provision working a forfeiture, to conduct the business as theretofore in such disregard. We cannot legalize, by our sanction, such perfidy."

In St. Paul Fire & Marine Ins. Co. v. Stell, 20 S. W. (2d) 399, by the Waco Court of Civil Appeals, it was held that, where insurer's agent issuing original policy and contracting to renew same knew that insured had no iron safe and that insured kept his books and papers in a wooden desk which was destroyed by fire, insurer, by issuing the policy and contracting to renew same, thereby waived the iron-safe clause, and could not after loss for first time make complaint and assert failure to keep iron safe as a defense.

In Camden Fire Ins. Ass'n v. Yarborough, 229 S. W. 336, by the Beaumont Court of Civil Appeals, writ of error dismissed, in an action against a fire insurer of a stock of lumber on a railroad switch, which when plaintiff insured presented to its local agents the inventory required by the record warranty clause in the policy, did not, through such agents, object to the inventory as not a compliance with such clause, plaintiff insured believing he was meeting the requirements of the insurer, it was held to have waived the noncompliance with the record warranty clause, being estopped to set up the same as a defense to the suit after a loss, though the inventory was in part for the purpose of showing the value of the property to be insured.

In Texas State Mut. Fire Ins. Co. v. Leverette, 289 S. W. 1032, by the Beaumont Court of Civil Appeals, writ of error refused, it was held, quoting from the headnotes, that:

"Any action of insurer, through officers specified in policy as empowered to waive its provisions, which recognizes continued validity of policy after actual or imputed knowledge of breach of provision therein, will amount to waiver of right to forfeit policy for such breach. * * * Knowledge that insured intended to breach iron-safe clause in fire policy, acquired by insurer's inspector when he visited insured to inspect risk, should be imputed to company, whether communicated to it or not. * * * Insurer waived breach of iron-safe clause in fire policy by failing to annul and allowing goods to be moved after notice."

In Law v. Texas State Mut. Fire Ins. Co., 12 S. W.(2d) 539, it was held by the Commission of Appeals, approved by the Supreme Court, that, quoting from the headnotes:

"Knowledge of soliciting agent of insurance company, that applicant for insurance on certain premises had tenant occupying them, and for which reason agent refused to take application, held knowledge of insurance company. * * * Insurer, whose agent had knowledge of conditions which would have allowed election to cancel policy, but did not undertake duty of performing election until after fire, it having kept unearned premiums which belonged to policy owner if policy had become void, was estopped to deny liability in action on the policy. * * * The principal of estoppel operates despite or without regard for intention."

See, also, Mecca Fire Ins. Co. v. Smith, 135 S. W. 688, by the Dallas Court of Civil Appeals; Springfield Fire & Marine Ins. Co. v. Brown, 13 S.W.(2d) 916, by the Waco Court of Civil Appeals; Southern Underwriters v. Jones, 13 S.W.(2d) 435, by the Waco Court of Civil Appeals; St. Paul Fire & Marine Ins. Co. v. Kitchen, 271 S. W. 893, by the Commission of Appeals, approved by the Supreme Court; National Fire Ins. Co. v. Carter, 257 S. W. 531, by the Commission of Appeals, approved by the Supreme Court; Wood on Fire Insurance, vol. 2, p. 1161; May on Insurance, § 497, p. 1182.

What is the distinction between "waiver" and "equitable estoppel?" Corpus Juris, vol. 26, p. 279, says:

"There is a clear distinction between waiver and equitable estoppel. They are not convertible terms. A waiver is the voluntary or intentional abandonment or relinquishment of a known right. It is an election not to take advantage of a technical defense in the nature of a forfeiture. The doctrine of estoppel, or estoppel in pais, is that a party may be precluded by his acts or conduct from asserting a right to the detriment or prejudice of another party who, entitled to rely on such conduct, has acted upon it. An estoppel forbids the assertion of the truth by one who has knowingly induced another to believe what is untrue and to act accordingly."

Appellee urges that in the absence of an allegation of accident, fraud, or mistake, the plaintiff was bound by the policy which he alleges was issued to him and produced upon the trial, and that the evidence of what took place between the parties prior to the issuance of the policy, and discussions or any negotiations leading up to the contract, are merged into the written instrument itself, and the evidence of those statements and negotiations will not be heard to vary the terms of the written contract.

In Great Eastern Casualty Co. v. Thomas, 178 S. W. 603, 606, this court said:

"Ordinarily, where a policy is delivered to the insured, and he accepts or retains the same, he is bound by its terms whether he reads it or not, if there are no facts shown which prevented him from doing so. Morrison v. Insurance Co., 69 Tex. 353, 6 S. W. 605, 5 Am. St. Rep. 63; Goddard v. Insurance Co., 67 Tex. 71, 1 S. W. 906, 60 Am. Rep. 1; * * * Insurance Co. v. Holcomb, 89 Tex. 404, 34 S. W. 915. In the last cited cases our Supreme Court uses the following language:

"'The fact that the plaintiff did not know the contents of the policy will not relieve him from the binding force of the warranty contained in it. He could have read it if he had desired to do so.'

"In the absence of allegations of fraud or mistake, plaintiff, having accepted the policy, will be conclusively presumed to have had knowledge of its contents. Insurance Co. v. Holcomb, supra; Insurance Co. v. Post, 25 Tex. Civ. App. 428, 62 S. W. 140."

In the further course of the opinion, the court said:

"The facts, as testified to by plaintiff, show that he made a verbal agreement, or parol contract, with the agent Mastin to have issued to him a policy covering accidental injury generally, but there is nothing to show that the insurance company had any knowledge of this alleged parol agreement between the plaintiff and the agent, or any information as to what kind of policy was desired or had been contracted for by plaintiff except as shown in said application. And where parol negotiations have been had which are understood shall be reduced to writing in order to constitute a contract between the parties and later a written contract is executed and delivered, it would be conclusively presumed that all terms and provisions of the contract are included in the written instrument, and said written instrument could not be varied by reason of any parol agreement or negotiation had prior thereto. A parol agreement of insurance, if made prior to the execution of the policy, cannot be shown to vary or contradict its terms."

In the case of Mecca Fire Ins. Co. v. Moore, 128 S. W. 441, the Court of Civil Appeals held that where there was no written application for a fire insurance policy, a question whether the insured answered truthfully all questions asked him by the insurer's local agent at the time the policy was written was irrelevant as not being competent to vary the terms of the policy in writing which was actually delivered. In the case of Orient Ins. Co. v. Prather, 25 Tex. Civ. App. 446, 62 S. W. 89, cited in Great Eastern Casualty Co. v. Thomas, supra, it was held that evidence that the insured, before the policy was issued, gave notice of his intention to take out other insurance in violation of the policy, was inadmissible as varying the terms of the written contract. It was held in the early case of Union Central Life Ins. Co. v. Chowning, 8 Tex. Civ. App. 455, 28 S. W. 117, that all negotiations leading up to a written contract of insurance are merged in the contract, which, in the absence of fraud or mistake, cannot be controlled or varied by parol evidence of the understanding and intention of the parties. See Keller v. L. & L. & G. Ins. Co., 27 Tex. Civ. App. 102, 65 S. W. 695, writ of error denied.

In Orient Ins. Co. v. Prather, 25 Tex. Civ. App. 446, 62 S. W. 89, 90, by the Galveston Court of Civil Appeals, an insurance policy was issued with the stipulation against other insurance. There was evidence in the record that the insured notified the insurer, before the issuance of the policy, of his intention to take out other insurance. It was held that this evidence was inadmissible as varying the terms of the written contract, and that the issuance of the policy with notice of insured's intention to take out other insurance is not a waiver of such stipulation. The court said:

"In the cases of Insurance Co. v. Mowry [96 U. S. 544, 24 L. Ed. 674], and Insurance Co. v. Bromwell [62 Ark. 43, 34 S. W. 83], supra, the court distinguishes between the acts of an agent waiving an existing forfeiture, or one that would exist by reason of the existence of certain facts, and the parol agreement of an agent that certain conditions in a written contract about to be executed would not be enforced. Upon this subject the court in the Bromwell Case say: 'This doctrine of estoppel and waiver has no application when the declaration of the agent refers to rights pertaining to a contract yet to be made, to which the person complaining is to be a party, for in such case he has it in his power to protect himself by proper stipulations in the contract when it is reduced to writing.' We think the distinction is clear. If, at the time the policy of insurance sued on in this case was issued, appellees had additional insurance on the same property, and the agent of the company knew such fact, the delivery of the policy under such circumstances would

be held a waiver * * * existing at the time the policy was issued, because the existence of such additional insurance would render the policy void in its inception if said provision was insisted upon, and to presume that such provision was not waived would be to impute to the company the fraudulent intent to deliver and receive pay for an invalid policy. * * * The application of this doctrine cannot be made to the case at bar, as the policy, when delivered, was not void under any of its provisions by reason of any existing fact, and no waiver of its provisions can be presumed against appellant. We think the evidence objected to was clearly inadmissible for any purpose, and appellant's objections to its introduction should have been sustained."

See Connecticut Fire Ins. Co. v. Buchanan (C. C. A.) 141 F. 877, 4 L. R. A. (N. S.) 758, opinion by Justice Van Devanter, now on the Supreme Court of the United States; Northern Assurance Co. v. Grand View Building Ass'n, 183 U. S. 308, 22 S. Ct. 133, 46 L. Ed. 213.

No allegations of fraud are made and no proof of fraud is shown, except that plaintiff below showed that M. D. Paschall came over to Lacasa and looked through his stock of goods, and he alleged that he saw and knew that plaintiff did not have an iron safe. That he asked Paschall what he must do to comply with the policy, and Paschall told him that he must keep an account of all goods bought and added to the stock and of all goods sold, which he attempted to do. The record does not disclose that there was any objection to the admission of this testimony, but it is urged by appellee that as the cause was tried before the court it was not necessary to object to inadmissible testimony as the court is deemed to have based his conclusions upon admissible testimony only. That, however, said testimony about the negotiations leading up to the contract was clearly inadmissible under the rule discussed. Therefore, this court is not authorized to base a judgment thereon. See Henry v. Phillips, 105 Tex. 459, 151 S. W. 533, 537, which says:

"While the admission of this testimony was not objected to by counsel for defendants, that fact would be important only in the event its admission was afterwards complained of as violative of a right reserved to defendants. Such incompetent testimony can never form the basis of a finding of facts in an appellate court, notwithstanding its presence in the record without objection. When the appellate court comes to apply the law to testimony constituting the facts of the case, it can only base its conclusion upon such testimony as is under the law competent. That which is not competent testimony should be given no probative force. The admission of such testimony is no talisman to

give effect to that which is irrelevant and incompetent to sustain or deny a material issue in a case."

■■ Appellee urges that the very strongest thing that can be said about this case is that Paschall had notice of intention on the part of Veal to violate the terms of the contract by not complying with the iron-safe clause. That,such is not the case, as Veal did not tell him what he was going to do and nothing was said about what he was going to do. Paschall did not know that no inventory had been taken and he did not know that Veal was not going to taken an inventory. Such matters were not discussed in any particular. It takes an affirmative consent to the expressed intention before the company is deemed to have waived the intended breach. The Supreme Court, in the case of New Orleans Ins. Ass'n v. Griffin & Shook, 66 Tex. 232, 18 S. W. 505, says that the condition in a policy of insurance requiring notice of other insurance afterward taken out upon the same property may not be complied with by notice of an intention to obtain other insurance, because such notice does not give it the opportunity contracted for, which is to enable the company to continue or cancel its contract. The court, however, says that if the insured gives notice of an intention to violate a contract and an agent expressly consents thereto, then a waiver arises, but mere silence and the issuance of the policy in the face of such expressed intention does not constitute a waiver, and the reason for that rule is set forth very clearly by Justice Pleasants in the quotation from the Prather Case, supra. Notice of an intention to violate the contract does not constitute a waiver. See Texas State Mut. Fire Ins. Co. v. Leverette (Tex. Civ. App.) 289 S. W. 1033; International Indemnity Co. v. Duncan (Tex. Civ. App.) 254 S. W. 233.

Appellee urges that St. Paul Fire & Marine Co. v. Stell (Tex. Civ. App.) 20 S.W.(2d) 399, does not come within the purview of the facts shown in this case; that Stell had a policy of insurance on his property containing an iron-safe clause; that he had the policy for almost a year, and the evidence shows that the agent knew he had not complied with the record warranty clause; that the agent knew this fact during the life of this existing policy. Such state of facts constitutes an entirely different situation from the one in the instant case. Paschall is not shown to have been at plaintiff's place of business subsequent to the time when he talked to him about taking the insurance. In Detroit F. & M. Ins. Co. v. Wright (Tex. Civ. App.) 273 S. W. 629, the evidence shows that the agent or inspector came to the insured's place of business after the policy was issued and that he asked about the insurance, manner of bookkeeping and how he kept his books, and if he had an iron safe, and the agent told him how he kept his books and that he kept them in a wooden desk, and the agent asked him if he knew there was a clause in his policy that required him to keep an iron safe, and the insured told him he did not know such fact, and if there was such a clause he would have his policy canceled. The policy was not canceled, and the El Paso court held that under such circumstances the company must be held to have waived the provisions of the iron-safe clause. In the Wright Case, the agent had knowledge of a then existing breach of a then existing policy.

■ Was the insurance company precluded from urging the failure of the insured to comply with the terms of the policy by failing to tender back the unearned premium? In Law v. Texas State M. F. Ins. Co., 12 S.W.(2d) 539, Justice Nickels, of the Commission of Appeals, presiding Justice Harvey dissenting, approved by the Supreme Court, refers to the fact that the insurance company kept the unearned premium and mentions this fact as one of the reasons for holding that the insurance company elected to hold the insurance contract not violated after it was notified that the policy holder had not undertaken to comply with the terms of the policy. But in 16 S.W.(2d) 277, in a motion for rehearing, Justice Nickels seems to have abandoned this holding.

In Phenix Ins. Co. v. Willis, 70 Tex. 12, 6 S. W. 825, 826, 8 Am. St. Rep. 566, the Supreme Court held that it was not necessary for the insurance company to return or offer to return any portion of the premium paid after discovering the fraud. This holding has been cited in Alsup v. Hawkeye Securities Fire Ins. Co., 300 S. W. 223, with approval, by the Texarkana Court of Civil Appeals. See Phœnix Ins. Co. v. Stevenson, 78 Ky. 150, which holds that if the risk once attaches, the premium is not apportionable. See Hanover Fire Ins. Co. v. Wood, 209 Ala. 380, 96 So. 250; Ætna Ins. Co. v. Mount, 90 Miss. 642, 44 So. 162, 45 So. 835, 15 L. R. A. (N. S.) 471.

Moreover, under the paragraph containing the record warranty clause the policy issued contains this provision:

"The books and inventories, and each of the same, as called for above, shall be by the Assured kept securely locked in a fireproof safe at night, and at all times when the building mentioned in the policy is not actually open for business; or, failing in this, the Assured shall keep such books and inventories, and each of them, in some secure place not exposed to a fire which would destroy said building; and, in event of a loss or damage insured against to the personal property mentioned herein, said books and inventories, and each of the same, must be by the Assured delivered to this company for examinations; or this entire policy shall be null

and void, and no suit or action shall be maintained hereon for any such loss.

"It is understood and agreed that this clause and the requirements thereof is one of the inducing causes to the acceptance of the risk herein assumed and the issuance of this policy, and that the terms and requirements hereof are material to the risk, and to this insurance, and to any loss or damage happening to the property described in this policy."

It is not shown in the record that the insurer's agent had knowledge, at the time he talked to Veal about issuing the policy, that Veal did not have some place outside of his store to keep his inventories and books, complying with the terms of the above stipulation in the policy. Paschall, the agent, did not know what Veal intended to do or what Veal was doing with reference to complying with this stipulation. We think for this reason, even though it may be said that the agent knew before the policy was issued that Veal did not have an iron safe, and that he did not intend to keep his books in an iron safe, and that therefore he waived for his company such provision and stipulation, yet it is not shown that he knew that at the time the policy was issued that Veal did not intend to keep his books in some safe place not exposed to a fire which would destroy his personal property insured.

We conclude that the judgment of the trial court must be affirmed, and therefore the judgment heretofore rendered is set aside and the opinion therein written is withdrawn, and the judgment is affirmed.