## CAROLINA INS. CO. v. CHRISTOPHER.
### No. 4342.

Court of Civil Appeals of Texas. Amarillo.
Jan. 21, 1935.

Rehearing Denied March 11, 1935.

Thompson, Knight, Baker & Harris, of Dallas, for appellant.

Nelson & Smith, of Tahoka, for appellee.

HALL, Chief Justice.

Based upon a fire insurance policy issued for $3,500 covering the appellee's stock of automobile tires, tubes, batteries, etc., and an additional sum of $500 covering the furniture and fixtures contained in his filling station at Tahoka, the appellee Christopher sued the insurer, Carolina Insurance Company, alleging that the policy was effective for one year beginning at noon on the 14th day of November, 1933, and that the property insured was totally destroyed by fire on December 7, 1933. He alleged that all the conditions precedent in the policy had been complied with, and prayed for judgment in the sum of $4,000, with interest from January 20, 1934.

The appellant answered by a general denial, and alleged a breach of the record warranty clause contained in the policy, denied that the appellee was the sole and unconditional owner of the property, further alleged that the sworn examination of plaintiff had after the fire did not amount to a waiver, that if any premium had been paid after the fire it was paid to some one in ignorance of the facts and had been tendered to plaintiff since, and further set up as a defense a breach of the three-fourths value clause contained in the policy.

By supplemental petition the appellee alleged that he made a complete inventory of his stock on September 15, 1933; that he had not been in business a year preceding the fire; and that the thirty days for taking an inventory and keeping books had not expired at the time of the fire. That he had complied with the terms of the policy relative to the making of inventory and keeping of books. That W. S. Cathey, the defendant's agent, at all times knew the character of books which he kept and made no objection to them, which constituted a waiver of the provision of the policy relative to the taking of an inventory and keeping of books. That he did keep a set of books as required by section 2 of the record warranty clause. That the defendant's agent visited the filling station both before and after the policy was issued and knew the kind and character of books that were kept and agreed to them, making no objection thereto, as result of which defendant waived its right to deny liability under said clause. That Mack Span, an agent of the defendant, inspected plaintiff's books after the policy was written, and made no objection thereto, by reason of which fact the defendant waived the record warranty clause. That the books which he kept were burned in a manner beyond his control. That they were kept in a place and manner satisfactory to the defendant's agents, whereby the defendant had waived the breach, if any, of the policy in that particular. That defendant knew plaintiff had no iron safe and that if the building burned the books would also burn. That after the fire defendant's agent told plaintiff he was sure all of his books burned and told plaintiff to get duplicate inventories and make up the best record he could of the property destroyed, and go and see the adjuster. That plaintiff went to Lubbock, incurring the expense and loss of time, believing that the loss under the policy would be paid. That defendant's agent, after the policy was issued, although told to do so several times, never collected the premium on the policy and after the loss the agent, with knowledge of the loss of the books and the inventories, accepted the premium and as a result defendant thereby waived any breach of the policy. That after the loss on December 7, 1933, and after the agent knew that the plaintiff's records had been destroyed by the fire, said agent consented to an assignment of a portion of the policy, thereby admitting that the policy was in force, and on December 26, nineteen days after the fire, defendant required plaintiff to submit to a sworn examination, all of which constituted a waiver of defendant's right to deny liability under the policy.

By a supplemental answer after a general denial, the defendant pleaded that provision of the policy that no waiver could be claimed unless it was in writing and attached to the policy, in so far as a condition in question might be raised by indorsement. In that connection defendant pleaded that the record warranty clause was not one which might be waived in writing or otherwise.

The court submitted the case to the jury upon seventeen issues, in response to which the jury found as follows:

(1) That W. S. Cathey, defendant's agent, inspected the contents of the building occupied by plaintiff before the policy was issued in order to determine whether the policy would be issued.

(2) That by reason of this inspection Cathey knew that plaintiff did not have an iron safe in which to keep his books as required by the terms of the policy.

(3) That Span, as agent of the defendant, inspected the building after the policy was written to determine whether the property was a satisfactory risk.

(4) That by reason of this inspection Span did not know that the plaintiff did not have an iron safe in which to keep his books as required by the policy.

(5) On the day after the fire plaintiff notified Cathey that the fire had occurred.

(6) Following the fire, plaintiff told Cathey that all of the books pertaining to his business had been destroyed by the fire.

(7) That after Cathey was advised by plaintiff of the result of the fire he accepted from plaintiff the premium for the one year's insurance provided in the policy.

(8) That plaintiff paid the premium to Cathey in good faith, believing the latter was authorized and empowered to accept it.

(9) That Cathey thereafter conveyed to the company such information in his report as to the fire.

(10) That after Cathey had given such information as to the fire and of the loss of plaintiff's books and records, the company caused the plaintiff to submit to an examination under oath relative to the fire and insurance.

(11) That Cathey remitted the premium paid for the policy to the defendant company.

(12) That after Cathey had knowledge of the fire and of the destruction of plaintiff's books and records thereby, he instructed plaintiff to get duplicate invoices and inventories as far as possible and make the record as best he could of the property which had been destroyed.

(13) Plaintiff believed that Cathey had authority from the defendant to so advise him.

(14) Plaintiff in good faith relied and acted upon Cathey's advice and did get duplicate invoices and inventories as far as possible, and made a record as best he could of the property destroyed.

(15) That plaintiff was the sole owner of the stock of merchandise that was destroyed.

(16) That the value of the stock of merchandise was $3,000.

(17) That the value of the furniture and fixtures was $600.

Based upon the verdict, the court rendered a judgment in favor of plaintiff for $2,700, with 6 per cent. interest from January 20, 1934. From such judgment, this appeal is prosecuted.

The principal defense seems to be a breach of the provisions of what is called the iron safe and record warranty clause. This clause provides for the keeping of a complete record of the business transacted, setting out in detail of what that record shall consist, and further provides:

"The books and inventories, and each of the same, as called for above, shall be by the Assured kept securely locked in a fire-proof safe at night, and at all times when the building mentioned in the Policy is not actually open for business; or, failing in this, the Assured shall keep such books and inventories, and each of them, in some secure place not exposed to a fire which would destroy said building; and, in event of a loss or damage insured against to the personal property mentioned herein, said books and inventories, and each of the same, must be by the Assured delivered to this Company for examinations; or this entire Policy shall be null and void, and no suit or action shall be maintained hereon for any such loss.

"It is understood and agreed that this clause and the requirements thereof is one of the inducing causes to the acceptance of the risk herein assumed and the issuance of this Policy, and that the terms and requirements hereof are material to the risk, and to this insurance, and to any loss or damage happening to the property described in this Policy."

While appellee insists that he kept a set of books and records in compliance with the requirements of this clause, it is conceded that he had no iron safe, and that his books and other records were not kept in a safe, but were laying on the counter in the building which was destroyed by the fire. He contends that the provisions of the iron safe clause have been waived by reason of the following facts:

(1) That the agent Cathey knew at the time he inspected the premises prior to writing the policy of insurance, that the appellee had no iron safe and that Cathey gave no consideration to the provision in the policy requiring an iron safe to be kept as a prerequisite to writing the policy.

(2) That Cathey knew of the breach of the iron safe clause after the fire and knew that the records, books, etc., had been burned. Nevertheless, he caused the appellee trouble and expense in securing and compiling information relative to such loss that might be presented to the company for the purpose of determining the amount of the loss, thereby leading appellee to believe that the policy would be paid.

(3) That Cathey accepted the premium after knowledge on his part of the breach and

consequent loss, and, after so accepting the premium, told appellee that the policy was in full force.

(4) That Cathey waived the breach by indorsing thereto and attaching to said policy after the fire an assignment of part of the proceeds of the policy to a third party.

(5) That the breach was further waived by the company by causing appellee to submit to a sworn examination under the terms of the policy after knowledge on the company's part that the record warranty clause had been breached.

(6) That the breach was waived by the company, in that it led the appellee to believe said policy would be paid after causing him to submit to a sworn examination subsequent to having acquired knowledge that the breach had occurred.

■ The appellant insists that it had no notice of the fact that appellee did not have an iron safe and was not keeping his books and records in an iron safe as required by the policy. The evidence upon that issue is as follows. From Cathey's testimony:

"Q. You went there and inspected that place of business for the Carolina Insurance Company before you wrote this policy? A. I guess that is what you would call it; I went in there to see if he had that much stock in there that the policy called for.

"Q. Did you inspect that place of business with regard to the writing of this policy of insurance that you wrote for J. C. Christopher? A. Yes, sir, that would be my reason for looking it over.

"Q. After that—or when you were there did you see his books there? A. Such as he might have had laying on the counter.

"Q. Where were they? A. Laying on the flat counter that you faced alongside the cash register.

"Q. Were they there each and every time you went into that place of business? A. I do not know as I ever failed to observe them.

"Q. Did you notice that was where he was keeping his books? A. I thought so; I was not specifically noticing them to see.

"Q. You knew he was living there in that building at that time? A. I was under the impression he was living in that building or one adjoining it; I do not know as he told me that.

"Q. Did you know that was the only place he had there in which to keep his records and his books and his equipment and everything he had? A. I presumed it was.

"Q. Did you know that was where he would keep them? A. I thought so as I did not think he was living anywhere else. * * *

"Q. State whether or not you in writing the policy of insurance took into consideration the fact that he did or did not have an iron safe? A. I do not think the safe ever entered my mind."

From plaintiff's testimony:

"Q. When the policy of insurance, or before it was written, did Mr. Cathey make an inspection of your place of business? A. Yes, sir.

"Q. Did he trade with you in the town of Tahoka? A. Yes, sir, quite a bit.

"Q. What nature of trading did he do there? A. Gas and oil.

"Q. Did he stop there? A. Yes, sir.

"Q. Did he at various times get out and come in your place of business or not? A. Yes, sir, he was in there the day before the fire. * * *

"Q. During the time that you had this policy and before the fire destroyed the property, state whether or not the agent, W. S. Cathey, had an occasion to observe the books and records as kept by you in your place of business? A. He did any time he wanted to because they were there on the desk.

"Q. Just answer the question? A. He did observe the books.

"Q. Where did you keep your books? A. Beside the cash register. * * *

"Q. About how many times would you say that Mr. Cathey, the agent who wrote this policy, was in your place of business after the time he wrote the policy and before the fire? A. I would say an average of three times a week; ten or twelve times during the time."

We think this testimony is sufficient to show that Cathey knew the plaintiff had no iron safe. In any event, it was sufficient to require the submission of the issue to the jury, and supports the finding of the jury. Plaintiff's place of business was a small building 20x14 feet, having one main front room with a small portion partitioned off at the rear where some of this machinery was kept and operated.

■ Plaintiff and defendant's agent lived in the same village, and the rule has been announced that, if the insurer's agent lives in the vicinity of the property and is familiar therewith, the insurer will be charged with knowledge of facts readily ascertainable. Commercial Fire Ins. Co. v. Allen, 80 Ala. 571,

1 So. 202; Ritchey v. Home Ins. Co., 104 Mo. App. 146, 78 S. W. 341; Short v. Home Insurance Co., 90 N. Y. 16, 43 Am. Rep. 138.

The record shows that M. C. Spann was an inspector for the company and visited the plaintiff's premises soon after the issuance of the policy, for the purpose of ascertaining the facts concerning the risk. While he endeavors to limit the extent of his inspection to the amount and value of the merchandise on hand, he must be held to have known that the policy contained the iron safe and record warranty clause, and that an iron safe was mentioned as part of the property insured.

In the case of Texas State Mutual Fire Ins. Co. v. Leverette (Tex. Civ. App.) 289 S. W. 1032, 1034, Judge Gallagher said, with reference to the knowledge acquired by an inspector who visited the appellee's place of business: "It was his duty to examine into the general conditions affecting the risk and amount and condition of the stock, and, in addition thereto, to ascertain whether the record warranty or iron-safe clause was being complied with."

Cathey admitted that he saw the books laying on the desk or counter near the cash register during several of his numerous visits to the place. It is held in Detroit Fire & Marine Ins. Co. v. Wright (Tex. Civ. App.) 273 S. W. 628, and in Central States Fire Ins. Co. v. Wright (Tex. Civ. App.) 273 S. W. 629, that the provision in a fire policy requiring the insured to keep his books in a fireproof safe at night, or in some other secure place not exposed to fire, may be waived by the company.

■ We strongly incline to the opinion that the above facts and testimony are sufficient to show notice of the absence of an iron safe and a waiver of that provision of the policy.

■ Plaintiff further contends that the fact that he was examined under oath after the fire, and after notice to the company that he had breached the iron safe and record warranty clause, constitutes a waiver. This contention must be sustained. In the case of Georgia Home Ins. Co. v. O'Neal, 14 Tex. Civ. App. 516, 38 S. W. 62, Finley, Justice, held that a forfeiture of the policy for noncompliance with the iron safe clause is waived if the company, with knowledge of the breach of the condition, causes the insured to be examined under oath pursuant to a clause in the policy.

■■ It was further shown that after the fire and after Cathey had been informed that plaintiff's books and records were burned with the building, and when plaintiff had offered to pay the premium several times prior to the fire, plaintiff asked Cathey about paying the premium and what effect it would have upon his policy, and was informed if the premium was paid then, the policy would be in force, and he immediately paid it. This constitutes a waiver. Home Ins. Co. v. Puckett (Tex. Civ. App.) 17 S.W.(2d) 849; Camden Fire Ins. Ass'n v. Yarborough (Tex. Civ. App.) 229 S. W. 336; Gish v. Insurance Company of North America, 16 Okl. 59, 87 P. 869, 13 L. R. A. (N. S.) 826. In Glens Falls Ins. Co. v. Bendy (Tex. Civ. App.) 39 S.W.(2d) 628, this rule is clearly announced, and it is further held that the local agent, authorized to countersign policies, deliver them and collect the premiums, was authorized to collect the premium after the fire.

■ The further contention is made that after plaintiff had informed Cathey that his books and records were destroyed, Cathey advised him to go to Lubbock and get duplicate invoices, and as far as possible get copies of and substitute all of his accounts, purchases, sales, and business transactions, and that these would be sufficient upon which to base a settlement. The record shows that in accordance with Cathey's directions he made several trips to Lubbock at considerable expense and trouble, and secured the required data. This has been held to constitute a waiver upon the ground that it is a recognition upon the part of the insurer that the policy is valid and its provisions are enforceable. Phœnix Assurance Co., Ltd. v. Bulloch (Tex. Civ. App.) 27 S.W.(2d) 571; Occidental Fire Ins. Co. v. Ft. Worth G. & E. Co. (Tex. Civ. App.) 294 S. W. 953; Old Colony Ins. Co. v. Starr-Mayfield Co. (Tex. Civ. App.) 135 S. W. 252; Home Ins. Co. v. Ft. Worth Grain & Elevator Co. (Tex. Civ. App.) 262 S. W. 870; Id. (Tex. Com. App.) 269 S. W. 432; German Fire Ins. Co. v. Gibbs, Wilson & Co., 42 Tex. Civ. App. 407, 92 S. W. 1068, 96 S. W. 760; American Central Ins. Co. v. Nunn (Tex. Civ. App.) 79 S. W. 88; 5 Couch on Insurance, § 1037. And it is held that such conduct on the part of the insurer is a waiver, even though the policy stipulates against a waiver, unless it is indorsed on the policy itself by some one authorized by the company to do so, in the German Fire Insurance Company v. Gibbs, Wilson & Co. Case, supra, 42 Tex. Civ. App. 407, 92 S. W. 1068, 96 S. W. 760, and also in the Old Colony Case, supra.

It was further shown that at the time of the fire plaintiff was indebted to a wholesale rubber tire company, and a few days after the fire, with the consent of Cathey, plaintiff assigned to his creditor an interest in the amount to be realized upon the policy equal to his indebtedness. We think this is a further recognition of the validity of the policy and an affirmative representation that the company intended to settle for the loss, and constitutes a waiver. State Mutual Life Ins. Co. v. Rosenberry (Tex. Civ. App.) 175 S. W. 757; 5 Cooleys Br. on Ins. 4313; 14 R. C. L. 1195, 372.

No reversible error is shown, and the judgment is affirmed.